IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-09-0424 |
| | § | |
| HOWARD GRANT | § | |
| CLINTON LEE | § | |
| OBISIKE NWANKWO | § | |

## MEMORANDUM AND ORDER

This criminal prosecution is before the Court on the Motions for Judgment of Acquittal filed by Defendants Howard Grant [Doc. # 620], Clinton Lee [Doc. # 621], and Obisike Nwankwo [Doc. # 622].[1]  The United States filed a Response to Grant's Motion [Doc. # 643] and a Consolidated Response to Lee's Motion and Nwankwo's Motion [Doc. # 644].  None of the Defendants filed a Reply.  Having presided over the trial, having reviewed the parties' submissions and all other relevant matters of record, and having applied governing legal authorities, the Court **denies** all three Motions.

### I.     FACTUAL BACKGROUND

The moving Defendants were charged by Indictment with conspiracy to engage in Medicare fraud, and Grant was charged in two related substantive counts of health

---

[1]  Grant included an alternative request for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

care fraud.[2] The conspiracy involved Onward Group Healthcare, Inc. ("Onward"), a provider of power wheelchairs and other durable medical equipment ("DME") to Medicare beneficiaries. Defendant Doris Vinitski was Onward's owner and operator. As part of the conspiracy, Defendant John Nasky Okonkwo, who pled guilty prior to trial, billed Medicare on Onward's behalf. Okonkwo testified at trial that he later provided Vinitski with fraudulent prescriptions to support the previously submitted billings. It was uncontested at trial that Vinitski, who entered a plea of guilty prior to trial, used Onward to engage in Medicare fraud and that Okonkwo knowingly participated in that fraud.

Defendant Grant was charged with participating in the conspiracy by ratifying the use of prescriptions bearing his name that were provided to Onward without his knowledge, and by knowingly allowing subsequent prescriptions bearing his name, to be used to obtain medically unnecessary DME for which Onward billed Medicare. Defendants Lee and Nwankwo were charged with participating in the conspiracy by knowingly delivering medically unnecessary DME for which Onward billed

---

[2]  Grant was charged with one count of Medicare fraud involving delivery of a $6,000.00 motorized wheelchair and with one count of Medicare fraud involving delivery of a $500.00 knee orthosis, both to a Medicare patient who clearly did not need the equipment.

Medicare. Defendants Grant, Lee, and Nwankwo denied any knowing participation in the conspiracy.

Following a ten-day trial, the jury returned a verdict on June 2, 2010, finding all three moving Defendants guilty on the conspiracy charge and finding Grant guilty on the two substantive counts. On June 15, 2010, Grant filed his Motion for Judgment of Acquittal, and Lee and Nwankwo filed their Motions on June 16, 2010. Briefing has concluded, and the Motions are ripe for decision.

## II.   STANDARD OF REVIEW

A defendant against whom a guilty verdict is returned may move for a judgment of acquittal. FED. R. CRIM. P. 29(c). "A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)). In reviewing the sufficiency of the evidence, a jury's verdict should be upheld "if any rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Charles*, 469 F.3d 402, 406 (5th Cir. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *United States v. Ragsdale*, 426 F.3d 765, 770–71 (5th Cir. 2005) (citing *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003)).

In conducting this inquiry, the Court is to examine the evidence as a whole and draw all reasonable inferences to support the verdict. *Charles*, 469 F.3d at 406 (citing *United States v. Delgado*, 256 F.3d 264, 273–74 (5th Cir. 2001)); *Ragsdale*, 426 F.3d at 771 (citing *Floyd*, 343 F.3d at 370). The reviewing court must "accept the jury's credibility determinations unless a witness's testimony is incredible or patently unbelievable." *United States v. Williams*, 520 F.3d 414, 420 (5th Cir. 2008) (quoting *United States v. Lopez*, 74 F.3d 575, 578 (5th Cir. 1996)). A jury is free to choose among various constructions of the evidence, provided such constructions are rational. *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008) (citing *United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007)). The jury "retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *United States v. Loe*, 262 F.3d 427, 434 (5th Cir. 2001). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," in order to be sufficient. *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999).

### III.   ANALYSIS

#### A.   Grant's Motion

Grant does not challenge the existence of the conspiracy involving Onward's submission of fraudulent claims to Medicare or his knowledge of that conspiracy. *See*

Grant's Motion, p. 17. Grant argues, however, that there is no evidence that he "ever received any money in the scheme." *Id.* Grant argues that the Government's evidence does not establish that he "had the deliberate, knowing, and specific intent to join the conspiracy."[3] *Id.* In support of his argument, Grant relies heavily on his own testimony and construes the Government's evidence in the light most favorable to his defense.

The Government is not required to prove a conspiracy through direct evidence. *United States v. Stephens*, 571 F.3d 401, 404 (5th Cir. 2009). Although an individual's association with criminal conspirators is insufficient to support a conspiracy conviction against that individual, circumstantial evidence is enough to prove an agreement, and minor participation may support conviction." *See id.* (citing *United States v. Bieganowski,* 313 F.3d 264, 276 (5th Cir. 2002)). "An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances." *Id.* (internal quotation marks and citations omitted).

---

[3] Grant does not argue in any meaningful way a basis for a judgment of acquittal on the substantive counts independent of his arguments regarding the conspiracy counts. In any event, under *Pinkerton v. United States*, 328 U.S. 640 (1946), a party to a conspiracy may be held responsible for a substantive offense committed by a co-conspirator in furtherance of the conspiracy.

The United States presented evidence that Defendant John Nasky Okonkwo provided Vinitski with fraudulent prescriptions for DME, once in early to mid-October (the "first batch") and again several weeks later (the "second batch"). All the prescriptions bore Grant's forged signature. Grant was advised of the first batch of forged prescriptions and visited Onward's office in mid-October. Vinitski showed Grant the forged prescriptions that she had received in the "first batch."

The United States presented testimony from Javonica Moten, an Onward employee, that Vinitski wanted Grant to make the prescriptions in the first batch "right" by seeing the patients and retroactively preparing the paperwork for the DME. Moten testified that Vinitski informed her that Grant "was asking for money to make those patients right." Grant testified at trial, however, that he knew the forged prescriptions could not be "made right." Moten further testified that Okonkwo told Vinitski that Grant "had already been paid for those patients, he already knew about it." Moten testified also that, to execute the payment scheme, Vinitski asked her if she knew anyone that Grant trusted through whom Vinitski could pay Grant indirectly.

The United States also presented the testimony of Defendant Okonkwo, who testified that Grant demanded payment from Vinitski for the fraudulent prescriptions. Okonkwo described one conversation during which Vinitski stated she was not going to pay Okonkwo because Grant was demanding $10,000.00 from Vinitski to redo the

paperwork and "to avoid any potential problem" with Medicare. Okonkwo testified that Vinitski was going to pay Grant through a third party. Okonkwo also testified that he believed that Grant had been paid for the prescriptions by Joseph Edem, who told Okonkwo that he paid the doctors at Grant's medical facility $100 per DME prescription and, therefore, that Okonkwo would need to pay $500 for each prescription. The United States presented evidence of an extensive pattern of cash deposits into Grant's bank accounts between May 2009 – just after the conspiracy period ended in March 2009 – and March 2010.

The United States also presented telephone records reflecting numerous telephone calls between Grant and Vinitski. The telephone conversations between the two increased in frequency after Grant visited Onward in mid-October. There were also a significant number of telephone calls and text messages between Grant and Edem into January 2009.

The Government's evidence, if believed by the jury, and the reasonable inferences that could be drawn therefrom, support the jury's verdict. The jury could have found from the Government's evidence that Grant became aware of the forged prescriptions in mid-October 2008 and, for cash paid through a third party, knowingly and willfully ratified their submission to Medicare by Onward. This evidence also supports the jury's finding that Grant knowingly and willfully agreed for Onward to

use prescriptions bearing his forged signature that Okonkwo provided to Onward in the "second batch."[4] From this and other evidence in the record, the jury could reasonably have found that Grant knowingly entered into the conspiracy, ratified its goals, and intentionally enabled it to use prescriptions known by all parties to be false and fraudulent.

The jury was also entitled to consider Grant's own testimony when deliberating and reaching its verdict. Grant testified twice during the trial and the jury was entitled to consider his credibility and to find it lacking. Grant repeatedly changed his testimony regarding various matters, including his relationship with Edem. He was unable to provide a clear, rational explanation for the numerous telephone and text communications with members of the conspiracy.[5]

Grant claimed he was duped by the conspirators and did not know his name was used and signature forged on the prescriptions before they were submitted to Medicare. He testified that, after he learned of the scheme, he did not join it and,

---

[4] Moten testified that she prepared lists of the prescriptions Okonkwo gave to Vinitski. The list of prescriptions in the first batch was given to Lee to give to Grant. This list was introduced as Government's Exhibit 173Z. Moten gave the list of prescriptions in the second batch to Vinitski. That list was in Grant's possession and was provided by Grant's attorney to the Government as Grant's Exhibit 1.

[5] Grant admitted he had made sizeable cash deposits into his bank accounts as shown by the Government, and this same practice had occurred during the period of the conspiracy.

instead, contacted five different lawyers regarding the prospect of a *qui tam* lawsuit against Onward for submitting the false Medicare claims. It was Grant's position that he would not have communicated with lawyers to file a lawsuit to expose the scheme if he had been a participant in it. On cross-examination, however, Grant admitted that he did not want to file a *qui tam* lawsuit unless he could profit from it and unless he could file it without any expense to himself. It was also revealed during cross-examination that Grant had not fully and honestly informed the lawyers about the Onward fraud, his extensive communications with the participants during the conspiracy period, or his own actions. For example, Grant wrote in a letter to a lawyer that he had met Edem only once, about one week before his first visit to Onward. Grant's testimony during trial, however, described at least four meetings with Edem, beginning in 2007. The jury could reasonably determine that the *qui tam* lawsuit was merely another means through which Grant sought to benefit financially from his participation in the Medicare fraud conspiracy.[6] There is no evidence that he understood at the time that information provided through a *qui tam* lawsuit would be provided to law enforcement.

---

[6]  It is undisputed that Grant never filed a *qui tam* lawsuit. It is also undisputed that Grant never reported the Onward fraud to any person or agency connected with the Medicare program or to any law enforcement agency.

The United States presented testimony from Moten and Okonkwo that Grant was involved in the conspiracy and demanded payment for other participation. The United States presented telephone and bank records that supported that testimony. The Government's evidence, which the jury was entitled to credit, presented a picture of Grant as a man who willfully and knowingly joined in the conspiracy for monetary gain and who engaged in (or aided in the commission of) the substantive counts of Medicare fraud. The Court denies Grant's Motion for Judgment of Acquittal.

*__Motion for New Trial__* – Alternatively, Grant seeks a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure because (1) the verdict is against the weight of the evidence, (2) the Court's failure to instruct the jury on an "omissions" theory was plain error, and (3) it is in the interest of justice. With reference to the jury instruction issue, Grant does not elaborate in any way on this argument. Grant did not request an "omissions" instruction, did not object to the instructions as given, and has not shown that such an instruction would have been appropriate. The United States did not premise its theory that Grant knowingly participated in the conspiracy entirely on an omission or failure to act. Moreover, the instructions given to the jury emphasized twice that mere presence is not sufficient to satisfy the elements of the crimes charged in the Indictment. There was no error in the jury instructions.

With reference to the weight of the evidence and the interests of justice for purposes of a Rule 33 motion for new trial, the Court may "weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (quoting *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)). The Court may not, however, entirely usurp the jury's function or simply set aside a jury's verdict. *Id* (internal quotations and citations omitted). Additionally, setting aside a jury's guilty verdict in the interests of justice is appropriate only where the evidence presented at trial "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *Id.*; *see also United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006); *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005). The power to set aside a verdict in the interest of justice "should be exercised infrequently by district courts, unless warranted by 'exceptional' circumstances." *Tarango*, 396 F.3d at 672.

For the reasons discussed above, the Court cannot find that the evidence in this case weighs against the guilty verdict or that exceptional circumstances require a new trial in the interests of justice. Grant's alternative Rule 33 Motion for New Trial is denied.

### B.     Lee's Motion

The evidence presented at trial, and which could be relied upon by the jury, indicated that Lee became aware of the fraudulent prescriptions in October 2008 and continued to do business with Vinitski until he was arrested in July 2009.  Indeed, it was undisputed that he enrolled in a training class – paid for by Vinitski – to learn to install and repair medical equipment.  There was testimony that he enrolled in this training class in order to make deliveries for Vinitski.  There was also testimony that Lee suggested an indirect method for Vinitski to make payments to Grant and offered to serve as the third party through whom the indirect payments would be made.  Telephone records also established a high number of unexplained telephone calls between Lee and Vinitski during the term of the conspiracy.  This evidence and reasonable inferences that the jury could draw from this evidence  support the jury's verdict of guilty beyond a reasonable doubt.  Consequently, the Court denies Lee's Motion.

### C.     Nwankwo's Motion

There was credible testimony at trial, which could be relied upon by the jury in reaching its verdict, that Nwankwo attempted delivery for at least nine of the forged prescriptions provided by Okonkwo.  There was credible testimony that Nwankwo repeatedly attempted deliveries for Vinitski which he was unable to complete because

the recipient refused delivery, because the recipient did not live at the address provided, or for a similar reason. Indeed, one witness testified that she refused delivery of a power wheelchair but that the delivery driver, Nwankwo, was insistent that she accept it and she eventually told him that she would call the police if he did not leave. There was testimony from Moten that Vinitski particularly liked for Nwankwo to make deliveries because he knew "how to make the people take the equipment even if they [didn't] want it." Onward paid Nwankwo almost $3,000.00 from December 2008 to May 2009 for making deliveries. This evidence, and the reasonable inferences to be drawn therefrom, supports the jury's verdict finding Nwankwo guilty beyond a reasonable doubt. The Court denies Nwankwo's Motion.

## IV.     CONCLUSION

The Government presented sufficient evidence at trial that, if accepted by the jury as true, supports the guilty verdicts against Grant, Lee, and Nwankwo in this case. As a result, none of the Defendants is entitled to a judgment of acquittal, and Grant is not entitled to a new trial. Therefore, it is hereby

**ORDERED** that Defendant Howard Grant's Motion for Judgment of Acquittal or for New Trial [Doc. # 620], Defendant Clinton Lee's Motion for Judgment of Acquittal [Doc. # 621], and Defendant Obisike Nwankwo's Motion for Judgment of Acquittal [Doc. # 622] are **DENIED**.

SIGNED at Houston, Texas, this **13th** day of **August, 2010**.

*[signature]*

Nancy F. Atlas
United States District Judge